**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DELVON MCCUNE, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | 1:17-cv-01706 |
| ) | |
| THOMAS J. DART not individually but as ) | |
| Cook County Sheriff, CORRECTIONS ) | |
| OFFICER COLEMAN, and CERMAK ) | |
| HEALTH SERVICES NURSE LORAINE, ) | |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff Delvon McCune ("**McCune**"), by and through his attorneys Rathje Woodward LLC, and for his First Amended Complaint, states as follows:

**PARTIES**

1. At all times relevant hereto, Plaintiff Delvon McCune was confined in the Cook County Jail located at 2700 S. California Avenue, Chicago, IL 60608 (hereinafter "**Jail**"). McCune is currently in custody at the Shawnee Correctional Center, located at 6665 State Route 146 East, Vienna, IL 62995.

2. At all times relevant hereto, Defendant Thomas J. Dart was and is the Sheriff of Cook County, Illinois and was acting under the color of state and local law.

3. At all times relevant hereto, Defendant Corrections Officer Coleman was employed by the Cook County Sheriff's Office and was acting under the color of state and local law.

4. At all times relevant hereto, Defendant Nurse Loraine was employed by Cermak Health Services of Cook County and was acting under the color of state and local law.

1

**JURISDICTION, AND VENUE**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C Sections 1331 and 1343.

6. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

**FACTUAL BACKGROUND**

7. McCune was born on October 23, 1991 in the City of Chicago. At a young age, he became affiliated with an Organization[1] in the Chicago area. McCune subsequently became a baptized Christian and found his faith. Thereafter, he sought to disassociate from the Organization.

8. McCune's disassociation was contrary to the Organization's rules, and McCune has received pushback from the Organization both before and after his incarceration. This pushback came in the form of intimidation, threats, and, on at least one occasion, a physical assault.

9. On September 21, 2016, McCune was arrested by the Chicago Police Department and placed into custody at the Jail. McCune spent 11 months in Jail before being transferred to an Illinois Department of Corrections facility.

10. The day McCune was taken into custody, September 21, 2016, he sought Protective Custody ("**PC**") out of fear that he would be retaliated against for leaving the Organization. Under PC status, McCune was to be segregated from the General Population ("**GP**").

11. McCune's request to be put into PC was technically approved, however the Jail took wholly inadequate measures to protect him. McCune should have been placed in a medium

---

[1] Note, the organization that McCune was associated with could more aptly be called a gang. Nonetheless, McCune's disassociation from the gang has put him at risk, and will continue to put him at risk. As such, in this Complaint, and throughout this litigation, McCune will refer to the organization as only "Organization" and will, at no time, name the Organization or provide any information about the Organization or its operations.

2

security unit ("**Division 6**"). However, the medium security PC unit was full, and thus McCune was placed into maximum security PC ("**Division 9**").

12. The Jail's placement of McCune into maximum security PC instead of medium custody PC when medium custody is full is part of a widespread and well-established custom.

13. Further, PC inmates such as McCune were to be issued orange PC uniforms.

14. Instead, McCune was issued a brown GP uniform.

15. On the evening of December 28, 2016 and/or morning of December 29, 2016, while in segregation in Division 9 McCune overheard inmates planning to attack him due to his disassociation from the Organization.

16. At the 7:00 a.m. count on December 29, 2016, McCune informed Corrections Officer ("**CO**") Coleman that he was in fear and that other inmates were planning on attacking him (the "**Warning Notice**").

17. According to the Cook County Inmate Manual, when an inmate adequately warns the Jail that he or she does not feel safe, such warning should result in the inmate being "placed into an Administrative/Alternative Housing unit while the necessary investigation of potential risk or harm is completed." (Ex. 1 (Cook County Department of Corrections Inmate Information Manual) at 5 (hereinafter the "**Manual**")[2]

18. The Warning Notice was sufficient to have triggered the policy of having McCune placed into such an Administrative/Alternative Housing unit for his safety.

---

[2] The Cook County Department of Corrections Information Handbook was retrieved from the University of Michigan Law School's website. (https://www.law.umich.edu/special/policyclearinghouse/Documents/Cook%20County%20Inmate%20Manual.pdf) (Last accessed May 1, 2018). McCune has asked for this information in a a Freedom of Information Act request, will seek discovery of this information, and will amend the Complaint if needed.

3

19. Neither Officer Coleman, nor any other Jail staff, placed McCune into Administrative/Alternative housing as required by the Manual.

20. On information and belief, neither Officer Coleman, nor any other Jail staff, conducted any sort of investigation, as required by the Manual.

21. After the completion of the 7:00 a.m. count on December 29, 2016, McCune walked into a common room for his one hour of dayroom time.

22. The dayroom included a mixture of protective custody and general population inmates. During that time, McCune was in boxcuffs and restraint chains.

23. Upon entering the common room, McCune walked to a telephone to make a call. At approximately 8:00 a.m. on December 29, 2016, right as McCune began his call, he was kicked firmly in the lower back by a general population inmate ("**Assailant**") who approached him from behind (the "**Assault**").

24. The Assault occurred in the presence of CO Coleman. CO Coleman separated the McCune and the attacker.

25. According to the Manual, the Assault was either a Category III violation for fighting (violation code number 300), or a Category VI violation for assault (violation code number 601). (Ex. 1 at 4-6)

26. Despite the fact that the Assault was a clear violation of the Jail's policies, the attacker did not immediately receive a disciplinary ticket or any disciplinary action, contrary to the provisions in the Manual.

27. On information and belief, no disciplinary ticket was ever issued, and no other disciplinary action was ever taken.

4

28. One day after the Assault, McCune was visibly in pain and informed CO Otto of his pain.

29. CO Otto nonetheless determined that McCune "required no immediate medical attention."

30. Within approximately a half hour of the assault, McCune spoke with Nurse Loraine of Cermak Health Services, who happened to be in the area. He informed her of his pain, but received no immediate medical attention. Nurse Loraine told McCune that he had to fill out a medical slip before receiving any treatment.

31. McCune filled out and submitted four medical slips before he was seen by a nurse. McCune was first examined by a nurse approximately 72 hours after the assault. Approximately ten days after the Assault, McCune was first allowed to see a doctor.

32. After two days of pain, McCune's cellmate in Division 9, Kevin Williams, let McCune sleep in the bottom bunk, as McCune was unable to climb into the top bunk for several days.

33. In the days after the attack, McCune warned CO Coleman and Sergeant Kilpeck that he continued to feel threatened in Division 9, due in part to his close proximity to the Assailant.

34. CO Coleman and Sergeant Kilpeck did not promptly address McCune's warnings.

35. McCune faced ongoing threats and intimidation by members of the Organization and by the Assailant. On one occasion, the Assailant confronted and spit on McCune.

36. One to two weeks after the Assault, the Jail moved McCune out of maximum security PC and into medium security PC.

37. Had CO Coleman responded to McCune's warning in a manner consistent with the Manual, McCune would not have been assaulted on December 29, 2016.

5

38. After the Assault, McCune experienced chronic and substantial pain in his back. McCune continued experiencing pain from the assault.

39. Despite the ongoing pain, McCune does not continue to regularly seek medical attention as he is charged $5.00 per visit. This fee is a significant burden for McCune.

40. Defendants' delay in offering treatment to McCune unnecessarily exasperated and delayed McCune's pain.

41. McCune has filed grievances and appeals, thereby exhausting his administrative remedies. (**Exhibit 2**, attached hereto)

## COUNT I - ACTION UNDER 42 U.S.C § 1983 FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS

42. Plaintiff realleges Paragraphs 1 through 41 as through fully set forth herein.

43. All Defendants, other than Nurse Loraine, were aware of a substantial risk of serious injury to McCune, but nevertheless failed to take appropriate steps to protect him from a known danger.

44. Each Defendant acted with deliberate indifference to McCune's serious medical needs.

45. Each Defendant deprived McCune of his rights under the Eighth and Fourteenth Amendments of the United States Constitution by (1) failing to take adequate measures to protect McCune, and (2) acting with deliberate indifference to McCune's serious medical needs.

46. The above constitutional deprivations are actionable under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff Delvon McCune prays that this Honorable Court:

(1) enter a monetary judgment for compensatory damages in favor of McCune and against all Defendants in an amount to be determined at trial;

(2) enter a monetary judgment for punitive damages in favor of McCune and against all Defendants named in their individual capacities, in an amount to be determined at trial;

(3) enter an injunctive order requiring that the Jail immediately stop placing medium security PC inmates into maximum security protective custody;

(4) find that McCune is entitled to receive medical care without paying $5.00 per visit; and

(5) enter any other relief that this Court deems just and reasonable.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

47. McCune incorporated Paragraphs 1 through 41 as though fully set forth herein.

48. Defendant CO Coleman had a duty to protect McCune from the Assault and to assist him in obtaining medical treatment.

49. Defendant Nurse Loraine owed McCune a duty to provide McCune with adequate medical care.

50. Defendant Dart had a duty to protect McCune from the Assault, to assist him in obtaining medical treatment, and to provide him with adequate medical care.

51. Each Defendant breached his or her duty by negligently failing to prevent the Assault, and by negligently failing to adequately treat McCune's injures after the Assault.

52. As a result of Defendants' breach, McCune suffered severe emotional distress due to the Assault and to an ongoing fear that Defendants would not take adequate measures to prevent future attacks, and physical damages due to the pain and suffering caused by the Assault.

**WHEREFORE**, Plaintiff Delvon McCune prays that this Honorable Court:

(1) enter a monetary judgment for compensatory damages in favor of McCune and against all Defendants in an amount to be determined at trial;

(2) enter a monetary judgment for punitive damages in favor of McCune and against all Defendants named in their individual capacities, in an amount to be determined at trial;

(3) enter an injunctive order requiring that the Jail immediately stop placing medium security PC inmates into maximum security protective custody;

(4) find that McCune is entitled to receive medical care without paying $5.00 per visit; and

(5) enter any other relief that this Court deems just and reasonable.

Date: July 13, 2018            Respectfully submitted,

/s/ Scott E. Pointner
Scott E. Pointner, Esq.
David P. Hollander, Esq.
Rathje Woodward LLC
300 E. Roosevelt Rd., Ste. 300
Wheaton, IL 60187
Phone: (630) 668-8500
Fax: (630) 668-9218
Email: spointner@rathjewoodward.com
       dhollander@rathjewoodward.com

**VERIFICATION OF DELVON MCCUNE**

Pursuant to 28 U.S.C. § 1746, I, Delvon McCune, verify under penalty of perjury that the factual statements in the foregoing Complaint are true and correct, except for such matters that are alleged on information and belief. I further verify that I have personal knowledge of the facts set forth in the Complaint, and I would be competent to testify as to the matters stated herein.

Executed on June 26, 2018.

*Delvon McCune* (signature)

Delvon McCune

8